Paul J. Lopach
MUSGRAVE & THEIS LLP
370 17th Street, Suite 4450
Denver, CO  80202
Phone:  (303) 385-4700
Fax:  (303) 385-4725
Email:  plopach@musgravetheis.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| JOHN WULFF and MAUREEN WULFF, | Cause No. CV-06-87-M-DWM |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| WESMONT BUILDERS-DEVELOPERS, INC.; NICHOLAS GENTILE; ADEA PROPERTY MANAGEMENT, LLP; CITY OF MISSOULA; and STATE FARM FIRE AND CASUALTY COMPANY; | |
| Defendants. | |

COME NOW, the Plaintiffs, by and through their counsel of record, and for their Complaint against the Defendants state and allege as follows:

### PARTIES

1. Plaintiff John Wulff is a citizen of the State of New York and a resident of Bronx County, New York.

2. Plaintiff Maureen Wulff is the wife of Plaintiff John Wulff, a citizen of the State of Connecticut, and a resident of Fairfield County, Connecticut.

3.      Defendant Wesmont Builders-Developers, Inc. ("Wesmont") is incorporated under the laws of the State of Montana with its principal place of business in Missoula, Montana. Wesmont is a citizen of the State of Montana.

4.      Defendant Nicholas Gentile ("Gentile") is a citizen of the State of California and a resident of Riverside County, California.

5.      Defendant ADEA Property Management, LLP ("ADEA") is a Montana limited liability partnership with its principal place of business in Missoula, Montana. Both partners of ADEA, David Armerding and Sharon Armerding, are citizens of the State of Montana and residents of Missoula, Montana.

6.      Defendant City of Missoula ("City") is a municipality organized under Mont. Code Ann. § 7-3-701 *et seq.*, and is a citizen of the State of Montana for purposes of diversity of citizenship.

7.      Defendant State Farm Fire and Casualty Company ("State Farm") is incorporated under the laws of the State of Delaware with its principal place of business in Illinois. State Farm is a citizen of the State of Delaware and the State of Illinois.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over the parties and the subject matter of this action. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the tort occurred within Missoula County, which lies in the Missoula Division of the United States District Court for the District of Montana.

**FACTUAL ALLEGATIONS**

10. On or about September 29, 2005, Plaintiffs John and Maureen Wulff entered into a Rental Agreement with ADEA for the rental of the residence located at 4687 Calistoga Lane in Missoula, Montana ("4687 Calistoga Lane" or the "Rental Property"). The Rental Property was built by Wesmont, inspected by the City, owned by Gentile, and managed and maintained by ADEA. Although the Wulffs' Rental Agreement commenced on September 29, 2005, they did not occupy the Rental Property until October 27, 2005.

11. The Rental Property was newly constructed in 2005 by Wesmont as part of a high-density residential development called Canyon Creek Village ("Canyon Creek"). Canyon Creek, which is located on the outskirts of Missoula near the airport and Interstate 90, is comprised of "affordable" homes primarily marketed to low-income and first-time homebuyers. Canyon Creek was planned, developed, and built by Defendant Wesmont.

12. Wesmont has constructed hundreds of houses in the Canyon Creek development over the past several years and is familiar with both industry construction practices and the City of Missoula's building codes.

13. Portions of Canyon Creek, including the house the Wulffs rented, are outside the Missoula city limits. To enforce its building codes against those properties located within Missoula County but outside the city limits, the City of Missoula does not allow properties to connect with the city's sewer system unless they comply with the International Residential Code ("IRC"), which the City has formally adopted.

14. Upon information and belief, before constructing the homes in Canyon Creek, Wesmont entered into a contract with the City that allowed homes within Canyon Creek but outside the city limits, including the Rental Property, to connect to the city sewer system in

return for Wesmont's agreement to abide by and comply with the City's building and mechanical codes. In a separate but related agreement, Wesmont contracted with the City Building Inspection Division to inspect the homes within the Canyon Creek development, including the Rental Property, to ensure compliance with the City's building and mechanical codes. These homes were required to comply with applicable building codes and pass inspection as a condition of connecting to the city sewer system.

15. With these agreements, the City of Missoula entered into valid contracts for the enforcement of its building code and made the IRC applicable to the Rental Property pursuant to Mont. Code Ann. § 50-60-304. The City's building codes were therefore applicable to the Rental Property and enforceable against Wesmont and future owners and landlords of the Rental Property.

16. Pursuant to the City's contract with Wesmont, building inspectors for the City of Missoula inspected the Rental Property on several occasions during its construction. Ultimately, City building inspectors passed the Rental Property on all of its inspections, gave their final approval to the Rental Property, approved Wesmont's final building permit, and allowed the Rental Property to connect to the City's sewer system.

17. Despite numerous inspections and a final approval, City building inspectors failed to identify building code violations present within the Rental Property, including but not limited to those governing the depth of stair treads.

18. A significant safety factor relative to stairways is the uniformity of the stair treads. Any variation in tread depth that could interfere with the rhythm of the stair poses an unreasonable danger that could materially affect the health and safety of a person using those stairs. To that end, Section R311.5.3.2 of the IRC, which has been adopted by the City of

Missoula, mandates that the greatest tread depth within any flight of stairs must not exceed the smallest by more than 3/8 inch.

19. The interior stairs within the Rental Property were designed and constructed without the requisite due care that a builder/developer like Wesmont should have used. As constructed, the stairs violate the IRC's depth and variance requirements and pose an unreasonable danger. Consequently, the interior stairs present a hidden or lurking danger.

20. Wesmont sold the Rental Property to Mr. Nicholas Gentile, who upon information and belief moved from California to Montana in 2005. Mr. Gentile purchased the Rental Property from Defendant Wesmont in 2005 to serve as his primary residence and obtained homeowners insurance on the Rental Property with State Farm (policy FP-7955MW). Upon information and belief, Mr. Gentile resided at 4687 Calistoga Lane until he left Missoula.

21. Mr. Gentile failed to remedy the dangerous condition of the stairs. He also failed to maintain the Rental Property in a reasonably safe condition, creating an unreasonable risk of injury to someone using the stairs.

22. Upon information and belief, in the summer or fall of 2005, after he purchased the Rental Property from Wesmont, Mr. Gentile abruptly left Missoula to return to California for personal reasons. Upon information and belief, Mr. Gentile was unsure whether he would be moving to California permanently, or returning to Missoula at some indefinite future time. Upon information and belief, Mr. Gentile had never rented out the Rental Property before, but because of this uncertainty he chose to rent the residence at 4687 Calistoga Lane until he could determine whether he would be returning to Missoula.

23. Mr. Gentile entered into an agreement with ADEA to maintain the Rental Property, locate renters, and oversee the renting of the property. ADEA failed to remedy the

dangerous condition presented by the stairs and maintain the Rental Property in a reasonably safe condition, creating an unreasonable risk of injury to someone using the stairs.

24. Shortly thereafter, Plaintiffs entered into a rental agreement with ADEA, leasing the property from ADEA for a period of nine months. Under the terms of the Wulffs' Rental Agreement with ADEA, ADEA was explicitly identified as the sole landlord and agreed to provide maintenance and to pay for certain utilities. The lease also required the Wulffs to make their rent checks payable to ADEA, with the option of sending the checks to ADEA at a P.O. Box in Missoula, bringing the checks directly to the ADEA office in Missoula, or leaving them in the drop box on the corner of ADEA's building in Missoula.

25. Though they were obligated to do so under the Montana Residential Landlord Tenant Act of 1977, Mont. Code Ann. § 70-24-101, *et seq.* ("RLTA"), ADEA and Mr. Gentile did not disclose Mr. Gentile as the owner of the Rental Property or otherwise identify a person authorized to act for the owner for the purpose of service of process and receiving notices and demands in writing on or before the Wulffs' tenancy commenced on September 29, 2005. As a result, the Wulffs were unaware that Mr. Gentile was the owner of the Rental Property at the time they entered into the Rental Agreement with Wesmont. Mr. Gentile and ADEA also failed to warn the Wulffs of the hidden and lurking danger presented by the interior stairs and their failure to maintain the premises in a reasonably safe condition.

26. The Wulffs moved into the Rental Property on or about October 27, 2005.

27. On the morning of December 13, 2005, as he was descending from the second floor of the Rental Property to the main floor, John Wulff fell down the interior stairs of the Rental Property. Mr. Wulff's fall was a direct result of Wesmont's poor construction of the Rental Property, the building code violations referenced above, Mr. Gentile and ADEA's failure

6

to warn the Wulffs of the hidden danger presented by the stairs, and Mr. Gentile and ADEA's failure to maintain the Rental Property in reasonably safe condition.

28.     As a result of his fall, John Wulff suffered catastrophic injuries that have rendered him a quadriplegic.  John Wulff has remained hospitalized continuously since his fall and, because of the severe injuries caused by the fall, he requires continuous medical attention and monitoring.

29.     As a direct result of the stairs' dangerous condition and his resulting fall and injuries, John Wulff has sustained life-threatening physical injuries, lost his freedom and ability to move of his own volition, incurred past and future medical bills, and been subjected to tremendous physical and mental pain and suffering.

30.     As a result of the interior stairs' dangerous condition and her husband's resulting injuries, Maureen Wulff has suffered a loss of consortium with her husband, lost wages, been subjected to tremendous mental anguish and suffering, and suffered other damages.

**COUNT I**
**VIOLATION OF THE MONTANA RESIDENTIAL LANDLORD TENANT ACT**
**(Against Nicholas Gentile and ADEA Property Management)**

31.     Plaintiffs reallege and incorporate paragraphs 1 through 30 above as though fully set forth herein.

32.     Defendants Gentile and ADEA were the Wulffs' landlords for the Rental Property under the Residential Landlord Tenant Act of 1977, Mont. Code Ann. § 70-24-101, *et seq*.

33.     Defendants Gentile and ADEA were obligated under the RLTA to disclose to the Wulffs in writing, at or before the commencement of their tenancy, the name and address of the person authorized to manage the premises as well as the owner of the premises or a person

authorized to act for the owner for the purpose of service of process and receiving notices and demands. Defendants Gentile and ADEA did not satisfy this obligation.

34. Defendants Gentile and ADEA were obligated under the RLTA to "comply with the requirements of applicable building and housing codes materially affecting [the] health and safety" of the Wulffs. Defendants Gentile and ADEA did not satisfy this obligation.

35. Defendants Gentile and ADEA were obligated under the RLTA to "make repairs and do whatever [was] necessary to put and keep the premises in a fit and habitable condition." Defendants Gentile and ADEA did not satisfy this obligation.

36. Defendants Gentile and ADEA violated the RLTA by failing to satisfy their obligations under the RLTA, as set forth above.

## COUNT II
## NEGLIGENCE *PER SE*
**(Against Nicholas Gentile, ADEA Property Management)**

37. Plaintiffs reallege and incorporate paragraphs 1 through 36 above as though fully set forth herein.

38. The RLTA was intended and enacted by the Montana Legislature for the benefit and safety of tenants and renters.

39. The Wulffs were tenants/renters under the RLTA at the time of John Wulff's injuries, and therefore are members of the class of persons the RLTA was intended and enacted to protect.

40. The RLTA was intended and enacted by the Montana Legislature to regulate property owners and/or landlords who rent properties to tenants.

41. Defendants Gentile and ADEA are owners and/or landlords under the RLTA, and therefore are members of the class of persons the RLTA was intended and enacted to regulate.

42. John Wulff's fall and resulting injuries are the type of injuries the RLTA was intended and enacted to prevent. Plaintiffs' resulting damages are the type of damages the RLTA was intended and enacted to prevent.

43. Based upon the violations of the RLTA as outlined above and the injuries suffered by Plaintiffs, Defendants Gentile and ADEA are negligent *per se*.

## COUNT III
## NEGLIGENCE
## (Against Defendants Gentile and ADEA)

44. Plaintiffs reallege and incorporate paragraphs 1 through 43 above as though fully set forth herein.

45. Defendants Gentile and ADEA owed a duty to Plaintiffs to comply with the RLTA, to use ordinary care in maintaining the Rental Property in a reasonably safe condition, to warn the Wulffs of any hidden or lurking dangers, and to provide a rental property that was reasonably safe and free from defects, hazardous conditions, and building code violations.

46. Defendants Gentile and ADEA breached their duties to Plaintiffs by failing to comply with the RLTA, failing to use ordinary care in maintaining the Rental Property in a reasonably safe condition, failing to warn the Wulffs of any hidden or lurking dangers, and failing to provide a rental property that was safe and free from serious defects, hazardous conditions, and building code violations.

47. As a direct and proximate cause of Defendants Gentile and ADEA's breaches of their duties to Plaintiffs, Plaintiff John Wulff was injured and both Plaintiffs suffered damages as alleged herein. Plaintiffs' injuries and damages were reasonably foreseeable.

**COUNT IV**
**NEGLIGENCE**
**(Against City of Missoula)**

48.     Plaintiffs reallege and incorporate paragraphs 1 through 47 above as though fully set forth herein.

49.     The properties in the Canyon Creek development, including the Rental Property, were governed by the IRC pursuant to Mont. Code Ann. § 50-60-304 because Defendant City of Missoula entered into a valid contract with Wesmont for the application and enforcement of the IRC.

50.     Defendant City of Missoula undertook a specific action to protect inhabitants of the Rental Property when it required Wesmont to comply with the IRC and conducted multiple inspections of the Rental Property to ensure that the Rental Property was reasonably safe, constructed with due care, and complied with all applicable building codes and regulations.  The City's inspections were a recognition of the City's duty to future owners, tenants, and visitors of the Rental Property because the City of Missoula explicitly and purposely took responsibility for ensuring that future inhabitants of and visitors to the Rental Property would be in a safe home devoid of hazardous conditions, hidden or lurking dangers, and building code violations.

51.     Defendant City of Missoula owed Plaintiffs a duty to ensure that the Rental Property was reasonably safe, constructed with due care, and complied with all applicable building codes and regulations by identifying hazardous conditions, hidden or lurking dangers, and violations of the applicable building code.  The City likewise had a duty to ensure that such violations were remedied prior to issuing a final building permit, allowing the Rental Property to utilize the City's sewer system, and allowing the Rental Property to be inhabited.

52. The City breached its duties to Plaintiffs by failing to identify hazardous conditions, hidden or lurking dangers, and material violations of the applicable building codes and regulations within the Rental Property that should have been remedied prior to its being inhabited.

53. As a direct and proximate result of the City's breach of the above duties, Plaintiff John Wulff suffered injuries and both Plaintiffs suffered damages as alleged herein. Plaintiffs' injuries and damages were reasonably foreseeable to Defendant City of Missoula.

54. Under Montana law, Mont. Code Ann. § 2-9-102, the City of Missoula is not immune to liability for its torts and those of its employees acting within the scope of their employment. The negligent inspections were conducted by City building inspectors who were employees of the Building Inspection Division of the Department of Public Works, which is an administrative body under the authority and control of the Missoula Mayor's Office. As such, the negligent inspections of the Rental Property were not legislative acts, as defined by Mont. Code Ann. § 2-9-111(c), to which governmental immunity could apply.

55. No common law or judicially-created exception, such as the Public Duty Doctrine, prevents Plaintiffs from bringing their claim against the City of Missoula. By undertaking the inspections of the Rental Property to ensure compliance with the applicable building codes and regulations and to protect future inhabitants of the property from injury, the City of Missoula created a special relationship with and owed a special duty to Plaintiffs.

## COUNT V
## NEGLIGENCE
### (Against Wesmont)

56. Plaintiffs reallege and incorporate paragraphs 1 through 55 above as though fully set forth herein.

11

57. Defendant Wesmont owed Plaintiffs a duty to build the Rental Property with due care and in such a manner that it was safe, contained no hidden or lurking dangers, and complied with all applicable building codes and regulations. Plaintiffs' injuries and damages as a result of Wesmont's breach of duty were reasonably foreseeable.

58. Defendant Wesmont breached its duties to Plaintiffs by failing to use due care in the construction of the Rental Property, failing to build the Rental Property in such a manner that it was safe and devoid of hidden or lurking dangers, and failing to build the Rental Property in compliance with the applicable building codes and regulations.

59. As a direct and proximate result of Defendant Wesmont's breach of the above duties, Plaintiff John Wulff suffered injuries and both Plaintiffs were damaged as alleged herein. Plaintiffs' injuries and damages were reasonably foreseeable to Defendant Wesmont.

## COUNT VI
## DECLARATORY RELIEF
### (Against Defendant State Farm)

60. Plaintiffs reallege and incorporate paragraphs 1 through 59 above as though fully set forth herein.

61. Defendant Gentile obtained liability insurance for the Rental Property from Defendant State Farm.

62. As alleged above, Defendant Gentile violated the Montana Residential Landlord Tenant Act and was negligent and negligent *per se*.

63. Plaintiff John Wulff suffered and continues to suffer severe injuries as a direct result of Defendants' violations of the RLTA, negligence, and negligence *per se*.

64. Plaintiffs' damages, including but not limited to John Wulff's current and future medical expenses and Maureen Wulff's lost wages, are directly causally related to the injuries

John Wulff suffered as a result of Defendant Gentile's violations of the RLTA, negligence, and negligence *per se*.

65. Defendant Gentile's liability for Plaintiffs' injuries and resulting medical expenses and other damages is reasonably clear.

66. Because Defendant Gentile's liability for Plaintiffs' injuries and resulting medical expenses and damages is reasonably clear, Defendant Gentile's insurance carrier, State Farm, is obligated to pay Plaintiffs' medical expenses and other damages pursuant to the Montana Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201(6) and (13), as well as *Ridley v. Guaranty Nat'l Ins. Co.*, 286 Mont. 325 (1997) and its progeny.

67. Plaintiffs' injuries are covered under Mr. Gentile's policy with State Farm. The exclusions contained within Mr. Gentile's policy do not justify the denial of coverage or Defendant State Farm's refusal to pay Plaintiffs' medical expenses.

68. Defendant State Farm has denied coverage to Defendant Gentile for his liability to Plaintiffs, and has refused to advance payments to Plaintiffs for their medical expenses and lost wages.

69. Plaintiffs are therefore entitled to a Declaratory Judgment under the Montana Uniform Declaratory Judgments Act, Mont. Code Ann. § 27-8-101, *et seq*., declaring that Defendant State Farm is obligated to pay Plaintiffs' medical expenses and other damages, including but not limited to lost wages, in advance of any settlement or judgment in the present action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1. For all special and general damages as allowed by law;

2. For Plaintiffs' costs and disbursements incurred herein;

3. For all fees, costs, and interest as allowed by law;

4. For a declaratory judgment and order requiring that Defendant State Farm advance payment for Plaintiffs' medical expenses and lost wages; and

5. For such other and further relief as is deemed just and equitable by this Court.

DATED this 26th day of May, 2006.


   /s/ Paul J. Lopach [Signature on File
Paul J. Lopach

**ATTORNEY FOR PLAINTIFFS**

Plaintiffs' Address:

45 Frisbie Street
Stamford, CT  06906